J-A09035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| L.J.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.B. | : | |
| | : | |
| Appellant | : | No. 1261 MDA 2022 |

Appeal from the Order Entered August 12, 2022,
in the Court of Common Pleas of Union County,
Civil Division at No(s): 17-0702.

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 16, 2023**

E.B. (Mother) appeals the order entered by the Union County Court of Common Pleas, which awarded L.J.G. (Father) primary physical custody of the parties' five-year-old son, A.G., (the Child). Under the prior arrangement, the Child divided a substantial amount of time between Mother's residence in Pennsylvania and Father's residence in Florida. The parties filed cross-modification petitions to establish their respective residence as the location where the Child would begin primary school. On appeal, Mother argues ***inter alia*** that the trial court erred when it failed to consider the relocation factors enumerated in 23 Pa.C.S.A. § 5337(h). After review, we affirm in part, reverse in part, and remand with instructions.

The record discloses an acrimonious and litigious history, which we abbreviate as follows. The parties are former spouses who separated in

November 2017, five months after the Child's birth. Custody litigation began at that time; the parties were Pennsylvania residents. In February 2018, the parties agreed to a shared custody arrangement. By the end of 2018, Mother sought primary custody; soon thereafter, Father sought to relocate with the Child to Florida, where he accepted a new job. In July 2019, the court denied Father's relocation petition, but awarded Father the ability to exercise 10 days of custody per month in Florida, and another 5 days of custody in Pennsylvania.

Father appealed, but the parties settled before the appeal was decided. The February 2020 settlement effectively granted Mother primary physical custody, but it allowed Father to exercise all his partial custody in Florida. Specifically, Father could exercise 15 consecutive days of custody every other month; on the off months, Father could exercise 8 days of custody.

The instant custody action began in January 2021 when Father filed a modification petition for primary custody. In March 2021, Mother filed her own modification petition, wherein she requested that her primary custody time be increased. With the Child approaching school age, the parties recognized the current arrangement was untenable, and that the Child would have to spend significantly more time at one location so he could start school.

Although a final custody hearing was scheduled, the parties' docket remained highly active. Relevant to this appeal is the court's December 3, 2021 interim order, which granted Father custody for 15 days per month indefinitely – as opposed to the 15-day/8-day monthly rotating schedule.

- 2 -

Thus, in effect, Father obtained an interim award of shared custody pending the final resolution of the parties' cross modification petitions.

The trial court ultimately held the final custody hearing on August 1 and 2, 2022. On August 5, the court indicated it would grant Father's petition for primary physical custody and then delineated its reasons for the award from the bench. *See* N.T. (Day 3), at 1-13. Critically, the trial court only analyzed the factors associated with 23 Pa.C.S.A. § 5328(a), but not the relocation factors listed in 23 Pa.C.S.A. § 5337(h). The court issued its formal order on August 11, 2022, docketed August 12, 2023.

Mother timely filed this appeal. She presents 11 issues for our review, which we re-order for ease of disposition:

> 1. Did the trial court abuse its discretion and commit an error of law by failing to consider the relevant relocation factors set forth in 23 Pa.C.S.A. § 5337(h) under the catchall provision of 23 Pa.C.S.A. § 5328(a)(16)?
>
> 2. Did the trial court abuse its discretion and commit an error of law in failing to analyze the relevant relocation factors set forth in 23 Pa.C.S.A. § 5337(h) and in failing to issue any analysis, written or oral, of the relevant relocation factors in rendering its custody decision?
>
> 3. Did the trial court abuse its discretion and commit an error of law by failing to take testimony on the relocation factors set forth in 23 Pa.C.S.A. § 5337(h)?
>
> 4. Did the trial court abuse its discretion and commit an error of law by denying Mother's motion for compulsory non-suit?

5. Did the trial court abuse its discretion and commit an error of law in stating that the burden of proof for the non-suit was equal?

6. Did the trial court abuse its discretion and commit an error of law in entering its December 3, 2021 interim custody order without a hearing in violation of Mother's constitutional right to procedural due process?

7. Did the trial court abuse its discretion and commit an error of law in issuing an order which delegates responsibility for setting the times and lengths of telephone and electronic communications to a parenting coordinator when the court declined to appoint a parenting coordinator in this matter?

8. Did the trial court abuse its discretion and commit an error of law in conferring a presumption in favor of Father's relocation to Florida in its analysis of [23 Pa.C.S.A. § 5328(a)(4),(11)].

9. Did the trial court abuse its discretion and commit an error of law in its analysis of [23 Pa.C.S.A. § 5328(a)(1), (4), (8), (9), (12), (13), (15)] by disregarding evidence favorable to Mother and unfavorable to Father and affording more weight to evidence favorable to Father?

10. Did the trial court abuse its discretion in failing to consider the financial circumstances of the parties in obligating Mother to be responsible for all of the expenses related to exercising her physical custody of the Child in Florida?

11. Did the trial court abuse its discretion and commit an error of law in issuing an order which declared Florida as the home state of the Child once Florida became the Child's primary residence?

Mother's Brief at 5-7.

**A. Consideration of the Relocation Factors**

In this section, we address contemporaneously Mother's first, second, and third appellate issues. Mother essentially asks whether the trial court erred by failing to apply the relocation factors set forth in Section 5337(h) of the Child Custody Act. To answer this question, we abide by the following scope and standard of review:

> The interpretation and application of a statute is a question of law that compels plenary review to determine whether the trial court committed an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 454 (Pa. Super. 2021) (citation omitted).

We begin by observing the relevant law governing this case. The Child Custody Act contains two sets of factors the trial court must consider, depending on the type of action. *See* 23 Pa.C.S.A. § 5328(a)(1)-(16); *see also* 23 Pa.C.S.A. § 5337(h). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" *Id.* We have held the court must conduct a Section 5328(a) analysis when a party seeks to modify the type of custody award. *See A.V. v. S.T.*, 87 A.3d 818, 824 n.4 (Pa. Super. 2014); *see also* 23 Pa.C.S.A. § 5338 ("Modification of existing order."); *and see* 23 Pa.C.S.A. § 5323(a) ("Award of custody."). Separately, Section 5337(h) enumerates ten factors a court must consider in

determining whether to grant a proposed relocation (again giving weighted consideration to those factors which affect safety).

This case does not involve "relocation," *per se*. When the Legislature enacted Section 5337 to address relocation, it anticipated there would be a "relocating party" and a "non-relocating party." ***D.K. v. S.P.K.***, 102 A.3d 467, 472 (Pa. Super. 2014). In ***D.K.***, this Court concluded that the relocation provisions set forth in Section 5337 do not apply when neither party is moving. ***D.K.***, 102 A.3d at 472-74. There, neither parent sought to relocate from their home; rather, the mother sought primary custody and that the children move from Father's home in Pennsylvania to her home in North Carolina. Technically speaking then, ***D.K.*** was not a relocation case.

However, we concluded that in such a situation – where neither parent is seeking to relocate, and only the children would be moving to a significantly distant location – trial courts "should still consider the relevant factors of Section 5337(h) in their Section 5328(a) best interest analysis." ***Id.*** at 477-478. The catchall provision of Section 5328(a)(16)("any other ***relevant*** factor") requires the court to consider the relevant circumstances unique to

- 6 -

any given case. In this sort of case, the Section 5337(h) factors are *per se* relevant to the Section 5328(a) best interest analysis.[1, 2]

We reached our decision in **D.K.** knowing full well that some Section 5337(h) factors are duplicative of the Section 5328(a) factors, either directly or implicitly. **D.K.**, 102 A.3d at 477. However, Section 5337(h) contains three factors which are unique:

> [I]n any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23

---

[1] In **D.K.**, we reached this holding by relying on **Clapper v. Harvey**, 716 A.2d 1271 (Pa. Super. 1998), a case that predated the enactment of the current iteration of the Child Custody Act. **Clapper** involved a mother in Florida seeking custody of her child who lived with father in Pennsylvania. We ruled that the best interest custody analysis required consideration of the "**Gruber** factors," which were the forebearers to the codified relocation factors in Section 5337(h). **See D.K.**, 102 A.3d at 475-476 (citing **Clapper v. Harvey**, 716 A.2d at 1272-73); **see also Gruber v. Gruber**, 583 A.2d 434 (Pa. Super. 1990). In **D.K.**, we applied the same logic to the current iteration of the Child Custody Act to hold that a proper best interests analysis under Section 5328(a) requires the consideration of the relocation factors under Section 5337(h, even though the matter is not, technically speaking, a relocation matter.

[2] Apart from the relocation context, this Court has held that Section 5328(a)(16) has incorporated custody factors that predated the current iteration of the Child Custody Act. For instance, in **S.T. v. R.W.**, 192 A.3d 1155, 1168 (Pa. Super. 2018), we concluded that Section 5328(a)(16) mandates the consideration of the "**Etter** factors," which are criteria to determine whether an incarcerated parent should be awarded supervised physical custody. **See also Etter v. Rose**, 684 A.2d 1092, 1093 (Pa. Super. 1996).

Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). Even though these three factors are not directly or implicitly encompassed in Section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to Section 5328(a)(16) which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16).

*Id.*

Returning to the instant matter, the trial court did not incorporate the Section 5337(h) factors into its best interest analysis under Section 5328(a)(16). Nevertheless, the trial court and Father maintain that the instant case is factually distinguishable from **D.K.** The trial court reasoned that because both parents shared custody, the Child was as much a Florida resident as he was a Pennsylvania resident. Thus, the trial court found **D.K.** inapposite. **See** T.C.O. at 8. Father adds that, unlike the children in **D.K.**, the subject Child had two established residences. "Thus, not only did the residences of the parties not change, the residence of the Child did not change with the trial court's custody determination. Rather the trial court merely established the location from which the Child would attend primary school, and it did so after a full and complete analysis of all evidence impacting the Child's best interests […]." **See** Father's Brief at 24-25.

We recognize that this case is atypical, insofar as the Child regularly traveled between the parties' respective homes, spent significant time at each,

and he had done so for years. By contrast, the more common application of ***D.K.*** usually involves a child who had spent little, if any, time at the petitioner's home.

Notwithstanding the factual distinction, we conclude that the holding in ***D.K.*** still applies. First, we disagree with Father and the trial court that, because the parties ***shared*** custody, the Child was not "moving" from Pennsylvania to Florida. When the litigation began five years ago, the parties shared custody, but they exercised custody almost exclusively in Pennsylvania. Then, by virtue of the February 2020 settlement agreement, Father exercised significant periods of custody in Florida. Even so, Mother retained her primary physical custody status, because the Child still primarily lived with her in Pennsylvania. Only during the pendency of the current litigation, did the court ***temporarily*** award Father shared custody, in Florida. Although Father regularly exercised significant partial custody in Florida, the Child's primary residence was always Pennsylvania.

Moreover, the definition of what constitutes a "move" is not determinative here. Instead, the effect of the geographical change is the concern. The geographical change, in the unique context of this case, is that the Child will ***stay*** in one location for the nine months of the school year; he will, for the first time, put down roots in one location; and he will not be returning to the other parent's home as frequently. It is not the newness of "the significantly distant location" that triggers consideration of the Section

5337(h) factors; rather, it is the drastic impact that the geographical change will have on the Child's life and the custody schedule.

Father presents a secondary argument that only serves to buttress our point. Father maintains that "it is obvious the trial court, in fact, considered all relevant evidence, including that which touched upon the relocation factors, in rendering its decision." **See** Father's Brief at 22-23. In other words, Father argues that even if the trial court did not formally analyze the Section 5337(h) factors, the court substantively addressed the very considerations that Section 5337(h) stands for in its delineation of its findings under Section 5328(a).

We might be inclined to agree with Father's argument, but that is not what occurred here. We recognize that the trial court has considerable leeway when it comes to the delineation of its reasons for the award under Section 5323(d).[3] However, upon our review of the trial court's delineation, it is apparent that the court did not address the Section 5337(h) factors, either formally or in spirit. **See** N.T. (Day 3) at 1-9. For instance, consider the court's delineation of Section 5328(a)(11) (the proximity of the residences of the parties). While this delineation is thorough, it demonstrates not only that

_____

[3] **See D.Q. v. K.K.**, 241 A.3d 1112, 1118 (Pa. Super. 2020) ("In expressing the reasons for its decision, 'there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.'"); **see also M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are the most salient and critical in each particular case."); **but see C.A.J. v. D.S.M.**, 136 A.3d 504, 510 (Pa. Super. 2016) (finding error "where the trial court listed the Section 5328(a) factors but failed to apply them.").

the court overlooked the relocation nature of this case, but also why the additional Section 5537(h) considerations are vital.

The court stated:

> Factor 11 is the proximity of the residences of the party. By agreement, the Child has been dividing his time between both communities since 2019. This court does not weigh this factor in favor of either party. ***And both parties have indicated that they are unable to fully enmesh or immerse the Child in their respective community due to the distances and the current custody schedule***. I think it's the one thing that everybody agreed [upon, that] it's difficult to have the Child and it's not the Child's best interest to be equally divided in two such – two communities that are at such a great distance away from each of his parents, notwithstanding the flights that the Child has had to endure.

N.T. (Day 3) at 7 (emphasis added).

In this excerpt, the trial court alludes to, but does not resolve, the three relevant Section 5337(h) factors that ***D.K.*** requires the court to address in this type of case:

- whether the change in the child's residence will enhance the general quality of life for the child,

- the feasibility of preserving the relationship between the other parent and the child, and

- the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development.

***D.K.***, 102 A.3d at 477 (citing 23 Pa.C.S.A. § 5337(h)(7); (3); (2)).

- 11 -

The trial court noted that the parties have been unable to fully immerse the Child in their respective communities. The court must decide then, into which community immersion is in the Child's best interests. Which of the two communities would have the most positive impact on the Child's quality of life? How feasible would be the preservation of the relationship with the other parent, if the Child lived long-term in either Florida or Pennsylvania? And given the Child's age, developmental stage, and needs, which community will have the most positive impact on his educational and emotional development. *See id.* This is not to say that the other Section 5337(h) factors are irrelevant, nor do we suggest that any of the factors, either in Section 5337(h) or Section 5328(a), are subordinate to Section 5337(h)(2), (3) and (7). We merely hold that the trial court's custody analysis is incomplete.

Father would have us deduce how the trial court might rule on these factors based upon the court's other findings. If we were to guess, we might guess right. But to fill in the gaps in the trial court's analysis would be to make our own findings, in the first instance. That is simply not the function of an appellate court. Although we are not bound by the trial court's deductions or inferences, "our role does not include making independent factual determinations." **D.K.**, 102 A.3d at 478. We are sympathetic to the toil that the parties, their counsel, and multiple trial judges have already invested. As the trial court was keen to observe, the effect of its decision is life-altering. *See* N.T. (Day 3) at 3. For that very reason, we must ensure appropriate consideration of every criterion that the law mandates. The

parents' right to due process demands nothing less; the Child deserves nothing less.

Therefore, we are constrained to hold that the trial court erred when it failed to consider the non-duplicative Section 5337(h) factors as part of its Section 5328(a) analysis. Mother's first and second appellate issues have merit. However, the remedy for this error is not, as Mother suggests, a new hearing before a different trial judge. The remedy is a remand for supplemental opinion and order specifically addressing the missing Section 5337(h) factors. **See, e.g., C.A.J. v. D.S.M.,** 136 A.3d 504, (Pa. Super. 2016).[4]

### B. Burdens of proof

In this part of our discussion, we address contemporaneously Mother's fourth and fifth appellate issues. The crux of these claims is that the trial court misapplied the law concerning burdens of proof. Specifically, Mother argues that the court erred for not treating Father's petition as a request for relocation, but instead concluded that both parties shared the burden equally.

---

[4] As a housekeeping matter, we briefly address Mother's allegation that the trial court erred for failing to take testimony regarding the Section 5337(h) factors. Mother does not allege that the trial court made an evidentiary ruling excluding testimony relevant to Section 5337(h). Rather, Mother largely restates that the court erred by failing to consider those factors. Having addressed that claim in full, we clarify that Mother warrants no further relief on this point. Mother's third appellate issue is without merit.

*See generally* Mother's Brief at 19-23.  These claims present questions of law, and thus our standard of review remains *de novo.*

As noted above, Section 5337 anticipates that one party seeks to relocate; when neither party seeks relocation the provisions of Section 5337 generally do not apply. ***D.K.***, 102 A.3d at 472-74.  The exception, of course, is Section 5337(h). ***Id.***   As ***D.K.*** made clear, this case is technically not a relocation matter.  Thus, the trial court was correct when it did not impose on the parties the burden of proof for relocation cases, 23 Pa.C.S.A. § 5337(i).[5]

Instead, the trial court applied the correct burden concerning the parties' cross-modification petitions.  In a dispute between parents, each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody would serve the ***best interests*** of the child. ***Graves v. Graves***, 265 A.3d 688, 698 (Pa. Super. 2021) (emphasis added).  In turn, the best interests of the child shall be determined by the Section 5328(a) factors. ***See*** 23 Pa.C.S.A. §§ 5328 ("Factors to Consider when Awarding

---

[5] Section 5337(i) provides:

(1)  The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2)  Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S.A. § 5337(i).

- 14 -

Custody"), 5338 ("Modification of Existing Order"). And in this case, per **D.K.**,

**supra,** Section 5328(a)(16) requires the consideration of the Section 5337(h)

factors.

Here, both parties sought modification. Both recognized that

continuation of their pre-existing custody arrangement was impossible, and

thus an outright denial of their petitions, in favor of the *status quo*, was not

an option for the trial court. Each had the burden to prove that their request

was in the Child's best interest.[6] Mother's fourth and fifth appellate issues

merit no relief.

## C. Due Process implications of the December 3, 2021 interim order

In her sixth appellate issue, Mother argues the trial court violated her

right to due process.[7] Specifically, Mother contends that her right to due

process was infringed when the court issued an interim order on December 3,

2021 without a hearing, which increased Father's custody from partial to

_____

[6] Mother's underlying contention has less to do with the burden of proof, and more to do with her belief that Father obtained a backdoor relocation. We understand the basis for this belief. Father's request for relocation was denied in 2019. And yet, in 2022, Father obtained a primary custody award, in Florida, without going through the complete relocation process set forth in Section 5337. However, once Father moved to Florida, he could no longer be a "relocating parent." Because his residence was unchanged when he sought custody modification in 2021, Section 5337 was largely inapplicable, except as we have already discussed above.

[7] We note that claims concerning due process violations are also questions of law, and thus our standard of review remains *de novo. **See S.T.**,* 192 A.3d at 1160.

shared pending final resolution of the cross-modification petitions. Because the interim order was entered by the previous, since-retired trial judge, the current trial judge could not speak to reasons behind the interim order, except to say that the interim order did not alter the existing custody arrangement's "essential structure." *See* T.C.O. at 14. Father also argues that the "essential structure" of the parties' ***shared custody*** remained undisturbed. *See* Father's Brief at 37-38 (emphasis added).

We do not agree with the trial judge's or Father's characterization with the interim order. Prior to the interim order, Mother had "primary physical custody" and Father had "partial physical custody." After the interim order, the parties had "shared physical custody." The terms "partial physical custody," "shared physical custody," and "primary physical custody" are terms of art, demarcating separate types of awards. ***See*** 23 Pa.C.S.A. § 5323(a); ***see also*** 23 Pa.C.S.A. § 5322 ("Definitions"). The facts of this case indicate that when the court issued an interim order, the court effectively changed the award of custody without a hearing.

Notably, the trial judge could not explain why the prior judge entered the interim order without a hearing. Without that explanation, we cannot say definitively whether the order violated Mother's right to due process. However, even if we agreed with Mother that the interim order violated her

right to due process, we cannot grant relief. **_See E.B. v. D.B._**, 209 A.3d 451

(Pa. Super. 2019).[8]  As such, Mother's sixth appellate issue is moot.

_____

[8] **_E.B._** is instructive both as to whether a due process violation occurred, and why this Court cannot grant Mother relief.

In **_E.B._**, we concluded that the trial court erred when it _sua sponte_ changed the parties' custody arrangement from primary-partial physical custody to shared custody pending the final custody hearing.  Although the court had authority to act _sua sponte_ under Pa.R.C.P. 1915.13 ("Special Relief"), the court violated the respondent-father's right to due process for three reasons.  First, the parties had no notice or meaningful opportunity to be heard; second "there was no emergency or apparent urgent need to preserve the well-being of the child." **_Id._** at 465.  Third, the parties' custody arrangement was already subject to a formal consent order; it was not the case that the parties were recently separated and in need of an interim order commemorating the _status quo_. **_Id._** at 466.

However, we explained that although the trial court erred, no relief could be provided:

> [T]he relief that [the appellant-father] seeks is impossible to achieve.  [The appellant-father] asks us to vacate the interim order, effectively re-setting the clock back to [two years prior].  This is tantamount to "unringing the bell" and rewinding the past two years of the child's life as if they never happened.

**_Id._** at 466-67 (citing **_Plowman v. Plowman_**, 597 A.2d at 701, 707 (Pa. Super.1991)).

The instant case resembles **_E.B._**  A key difference is that the record in this case does not reveal why the trial court issued the December 3, 2021 interim order.  Thus, we cannot determine whether the interim order was a proper use of the court's special relief powers or whether the interim order violated Mother's due process.  But even if a violation occurred, we similarly would be unable to grant Mother relief.  As we explained in **_E.B._** and in **_Plowman_**, this Court cannot "unring the bell" or rewind the last two years.

- 17 -

### D. Typographical error

As a final housekeeping measure, we address Mother's seventh appellate issue, which concerns the appointment of a parenting coordinator. The trial court acknowledged in its Rule 1925(a) opinion that the reference to the parenting coordinator in the August 11, 2022 custody order was a typographical error and that it should be stricken. On appeal, Mother merely brings our attention to the error so that we direct the trial court to strike the erroneous provision. We posit that the trial court already had jurisdiction to correct this typographical error, pursuant to Pa.R.A.P. 1701(b)(1), but lest there be any confusion, we grant the trial court this authority.

### Conclusion

In sum, we conclude the trial court erred when it failed to consider the Section 5337(h) factors as part of its Section 5328(a) analysis. However, the trial court imposed the correct burden of proof on the parties. The question of the December 3, 2021 interim order violated Mother's right to due process is moot. Finally, the trial court is authorized to strike the typographical error concerning the parenting coordinator. Mother's remaining appellate issues concern either the substantive custody analysis, or the effects thereof. As the trial court's custody analysis is incomplete, we do not rule on those issues.

We remand for the trial court to supplement its best interest analysis with consideration of the Section 5337(h) factors. No additional evidentiary proceedings are necessary. Within thirty (30) days of the date the record is remitted, the trial court shall enter a new custody order; the trial court shall

delineate its reasons for the award in accordance with Section 5323(d). Either party may then appeal within 30 days of the trial court's order.[9] In the meantime, the custody order of August 11, 2022 shall remain in effect, but as a temporary order.

Order converted to temporary order. Jurisdiction Relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/16/2023

---

[9] We clarify that Mother's eighth, ninth, tenth, and eleventh appellate issues, as re-ordered in this memorandum, are preserved. If Mother decides to appeal the trial court's new custody order, and desires to be heard on these issues, Mother is directed to re-raise those issues.